**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————

|  |  |  |
|---|---|---|
| | ) | |
| **OLIVIA PESCATORE,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-2245 (RMC)** |
| | ) | |
| **JUVENAL OVIDIO RICARDO** | ) | |
| **PALMERA PINEDA PINEDA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

———————————————————

<u>**MOTION TO DELAY THE DETERMINATION OF PLAINTIFFS' DAMAGES**</u>

Plaintiffs are the family members of Frank Thomas Pescatore, Jr. ("Pescatore"), an American geologist who was kidnapped and murdered by Colombian FARC terrorists. As this Court is aware, Plaintiffs filed claims against the Defendants pursuant to the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333, and this Court entered a default judgment as to liability against the Defendants, but held that further evidence should be submitted "to adjudge the scope and amount of damages in this case." [Dkt. # 17]. Plaintiffs now hereby respectfully request a delay in the submission of this evidence, which is currently scheduled to take place over two-days starting on May 2, 2011. Plaintiffs have several significant reasons for requesting this delay. These include the preservation of this Court's time and scarce resources, avoiding unnecessary expenses, and sparing Plaintiffs needless emotional suffering from having to testify again about their traumatic experiences in other related federal cases that are now pending, one of which was recently filed this month. To fully understand all these concerns, some background information is necessary.

After Plaintiffs filed their ATA case against the Defendants, *i.e*., the Colombian terrorists who were directly responsible for Pescatore's kidnapping and murder, they filed a subsequent case in this district against Chiquita Brands International, Inc. ("Chiquita") (09-cv-490-RMC) for aiding and abetting these terrorists.  This related ATA case was based on a criminal case the Department of Justice ("DOJ") brought against Chiquita after it learned that Chiquita had willfully financed FARC and other Colombian terrorists to further its banana business in Colombia and undermine its competition.  As the DOJ stated in its sentencing memorandum that was filed in this district, 07-cr-55-RCL, Dkt. # 17, at pp. 12-13:

> This is a very serious matter.  Defendant Chiquita has admitted to paying terrorist organizations in Colombia for about fifteen years from 1989 through February 2004.  Defendant Chiquita paid all three major terrorist organizations in Colombia: the AUC, the FARC, and the ELN.  Those terrorist organizations are responsible for a staggering loss of life in that country.
>                                              …
> The money that defendant Chiquita paid to the AUC (and to the FARC and the ELN before that) was put to whatever use the terrorists saw fit.  Money is fungible.  Regardless of the Company's motivations, defendant Chiquita's money helped buy weapons and ammunition used to kill innocent victims of terrorism. Simply put, defendant Chiquita funded terrorism.

Because of evidence disclosed during this criminal case, including efforts to fraudulently conceal Chiquita's wrongful conduct, Plaintiffs' ATA case against Chiquita is ongoing and was transferred from this Court to the U.S. District Court for the Southern District of Florida for pretrial proceedings by the U.S. Judicial Panel on Multidistrict Litigation ("MDL Panel") pursuant to 28 U.S.C. § 1407.  It is now docketed as 09-cv-80683 with numerous other cases related to Chiquita's criminal conduct, including the claims of hundreds of Colombian citizens who assert violations of international law pursuant to the Alien Tort Statute, 28 U.S.C. § 1350. *See In re Chiquita Brands Intern., Inc. Alien Tort Statute and Shareholder Derivative Litigation*, 08-md-1916.

Additionally, since the filing of Plaintiffs' ATA case against Chiquita, several decisions have subsequently upheld the validity of an ATA case against an entity that knowingly provides money to terrorists. *See, e.g., Wultz v. Islamic Republic of Iran*, -- F. Supp. 2d --, 2010 WL 4228350 (D.D.C. Oct. 20, 2010) (holding aiding and abetting claims for financing terrorism are viable under the ATA). Thus, although the district court in Florida has yet to make any final determinations in Plaintiffs' ATA case against Chiquita, there is a strong likelihood that Plaintiffs' claims against Chiquita could go on to trial.

Yet it is still not clear where this potential trial will occur. According to the Supreme Court, a case transferred by the MDL Panel for pretrial proceedings may be remanded back to where it was originally filed for trial. *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). Alternatively, the parties in a case transferred pursuant to § 1407 can also consent to have the case tried in the transferee district. *See In re Carbon Dioxide Industry Antitrust Litigation*, 229 F. 3d 1321, 1326 (11th Cir. 2000). As such, it is not at all clear if and where a trial against Chiquita would proceed, and this potential trial will certainly involve the same overlapping damage issues at stake in Plaintiffs' case against the Defendants. Accordingly, delaying Plaintiffs' testimony will allow this Court to properly consolidate all related cases and preserve this Court's time and scarce judicial resources.

In particular, if Plaintiffs' case against Chiquita proceeds and is remanded back to this Court for trial, Plaintiffs' damages against all defendants can be consolidated and determined at the same trial. On the other hand, if the trial is scheduled to occur in Florida, this Court can also transfer Plaintiffs' damages claims against the Defendants for subsequent determination pursuant to the change of venue provision in 28 U.S.C. § 1404(a). Finally, if Plaintiffs' claims against

Chiquita are dismissed, this Court can allow Plaintiffs to present their damages testimony in this district as originally planned, which is a convenient location between Alabama and New Jersey.

Furthermore, delaying Plaintiffs' testimony will spare them from having to testify about their family's traumatic experiences on multiple occasions.  A related third ATA complaint was recently filed in this Court on March 9, 2011 on behalf of the estate of Pescatore's sister, Jane Pescatore Sparrow, who was alive at the time of Pescatore's murder and suffered severe emotional distress.  She died in 2005 as a result of a brain infection, but her husband did not decide to file a case on her behalf until after Plaintiffs had already filed their own cases and after this Court had issued a date for Plaintiffs to submit evidence to it regarding their emotional damages.  Plaintiffs now worry that as a result of this newly filed case involving Pescatore's murder that they will also be required to submit emotional damages evidence not only for their own claims but also for the claims of Jane Pescatore Sparrow who can no longer testify about the close relationship she maintained with her brother over many years.  *See* Fed. R. Evid. 803(3) (emotional condition hearsay permitted to prove damages).

The possibility that Plaintiffs will be required to reopen their emotional wounds on the witness stand on multiple occasions is just too much for many of them to bear. Pescatore's kidnapping and murder was a profoundly traumatic event for his parents, wife, children, and siblings, and it has left deep emotional wounds on all of them.  Some of them still suffer from severe stress, depression, and related anxiety disorders and need to take extensive medications to cope with the aftereffects of Pescatore's murder.  Moreover, Plaintiffs are located in Alabama and New Jersey and will need to take time off of work and bear related travel expenses to provide testimony.  Although Plaintiffs are determined to seek justice on Pescatore's behalf, they implore that their quest for justice not cause more heartache and suffering than absolutely

necessary. Consequently, Plaintiffs request that this Court delay a determination of their damages against the Defendants until it is clear whether they will also be required to provide testimony for Jane Pescatore Sparrow or for their own claims against Chiquita.

Given that a delay will preserve this Court's time and resources and spare Plaintiffs needless heartache and expense, Plaintiffs believe it is prudent to ask this Court to delay their testimony until they can be certain that they will not be forced to provide duplicative and traumatic testimony on other occasions in related cases.  To assist in the preservation of this Court's scarce judicial resources, Plaintiffs will keep this Court timely appraised of all relevant developments regarding the ongoing litigation in Florida and will report back to this Court if and where a trial involving Plaintiffs' ATA claims is to be held.

## Conclusion

For all of the above reasons, Plaintiffs respectfully request that this Court delay the determination of Plaintiffs' damages until further notice as detailed in the attached proposed order.

Date: March 31, 2011                                   Respectfully submitted,

                                                  By:    /s/ Nathaniel A. Tarnor
                                                         Nathaniel A. Tarnor
                                                         D.C. Bar No. 985457
                                                         Peter G. Safirstein (*pro hac vice*)
                                                         Milberg LLP
                                                         One Pennsylvania Plaza
                                                         New York, NY 10119
                                                         ntarnor@milberg.com
                                                         psafirstein@milberg.com
                                                         Tel: (212) 594-5300
                                                         Fax: (212) 868-1229