# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

|  |  |
|---|---|
| OLIVIA PESCATORE, *et al.*, | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | )      Civil Action No. 08-2245 (RMC) |
|  | ) |
| JUVENAL OVIDIO RICARDO | ) |
| PALMERA PINEDA, *et al.*, | ) |
|  | ) |
| Defendants. | ) |

---

## MEMORANDUM OPINION

Frank Thomas Pescatore, Jr., was kidnapped in 1996, held for ransom, and ultimately killed by the Fuerzas Armadas Revolucionarias de Colombia (FARC). Members of the Pescatore family (Plaintiffs) sued FARC and senior FARC commander Juvenal Ovidio Ricardo Palmera Pineda under the Antiterrorism Act, 18 U.S.C. § 2333 *et seq.*, and this Court granted default judgment and damages. Plaintiffs now seek to enforce the Court's Order for damages against Samark Jose Lopez Bello and his company, the Yakima Trading Corporation, as agents or instrumentalities of FARC. Mr. Lopez and Yakima, neither of which was a party to the underlying lawsuit, move to intervene so that they may defend themselves against execution of the judgment order. Because Mr. Lopez and Yakima are entitled to an opportunity to defend their interests in this action, the Court will grant their motion to intervene.

## I. BACKGROUND

In November 2018, after ten years of litigation both here and as part of a multi-district case in Florida, s*ee Stansell v. Revolutionary Armed Forces of Columbia*, 771 F.3d 713 (11th Cir. 2014), Plaintiffs secured from this Court an Order of default judgment against Mr. Pineda and FARC totaling $69 million. *See Pescatore v. Pineda*, 345 F. Supp. 3d 68 (D.D.C.

2018).  Section 201(a) of the Terrorism Risk Insurance Act (TRIA), 28 U.S.C. § 1610 *et seq*.,

allows Plaintiffs to satisfy this judgment against "blocked assets" of "agents or instrumentalities"

of FARC.  *See Stansell*, 771 F.3d at 722-23.  Assets are blocked when the United States

Department of Treasury Office of Foreign Assets Control (OFAC) designates their owner a

Specially Designated Narcotics Trafficker (SDNT).  However, it is up to the courts to determine

whether a person is an agent or instrumentality of FARC.  *Id.* at 726-27 ("Before a writ of

garnishment or execution pursuant to TRIA § 201 issues, a district court must determine that the

property owner is . . . an agency or instrumentality of the judgment debtor terrorist party.").

OFAC has designated Mr. Lopez and Yakima (together, Intervenors) SDNTs.  *See*

Opp'n, Ex. 1, Treasury Sanctions Prominent Venezuelan Drug Trafficker Tareck El Aissami and

His Primary Frontman Samark Lopez Bello [Dkt. 79-1].  Based on this, and without a court

finding that Intervenors are agents or instrumentalities of FARC, Plaintiffs sent writs of

attachment to several banks attempting to seize Intervenors' assets, copies of which were also

mailed to properties owned by Mr. Lopez and Yakima but blocked by OFAC.  *See* Pls.' Mot. to

Enforce Their Judgment Against the Blocked Assets of FARC and FARC's Agencies and

Instrumentalities (Motion to Enforce) [Dkt. 68] at 3.  Co-plaintiffs from the *Stanell* litigation

(*Stansell* Plaintiffs) moved to dismiss these writs, protesting that Plaintiffs were attempting to

gain lien priority on those assets improperly by skipping this crucial finding.  On January 18,

2019, Plaintiffs responded by moving this Court to find that Mr. Lopez and Yakima are agents or

instrumentalities of FARC.  *See* Motion to Enforce.

Meanwhile, on January 22, 2019, the *Stansell* Plaintiffs—who have moved

another court in this district to find Mr. Lopez and Yakima are, along with others, agents or

instrumentalities of FARC—emailed a copy of their motion to dismiss to Mr. Lopez's counsel.

*See* Mot., Ex. 2, Decl. of Jeffrey M. Kolansky in Supp. of Mot. to Intervene [Dkt. 77-2] ¶ 3.  Mr.

Lopez and Yakima moved to intervene in this case on February 11, 2019.  Plaintiffs oppose.[1]

## II.    LEGAL STANDARD

A party may intervene in an action as of right when that party "claims an interest

relating to the property or transaction that is the subject of the action, and is so situated that

disposing of the action may as a practical matter impair or impede the movant's ability to protect

its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).

The D.C. Circuit has "identified four prerequisites to intervene as of right:  (1) the application to

intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the

action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an

adequate representative of applicant's interests."  *Karsner v. Lothian*, 532 F.3d 876, 885 (internal

cites and quotes omitted).

## III.    ANALYSIS

Plaintiffs contest only the first two factors:  timeliness and the interest at stake.

### A.    Timeliness

Timeliness "is to be judged in consideration of all the circumstances, especially

weighing the factors of time elapsed since the inception of the suit, the purpose for which

intervention is sought, the need for intervention as a means of preserving the applicant's rights,

and the probability of prejudice to those already parties in the case."  *Id.* at 886 (internal cites and

quotes omitted).  Timeliness depends on when the movant "knew or should have known that any

---

[1] *See* Samark Jose Lopez Bello's & Yakima Trading Corp.'s Mot. to Intervene & Request for Stay [Dkt. 77]; Samark Jose Lopez Bello's & Yakima Trading Corp.'s Mem. in Supp. of Mot. to Intervene (Mem.) [Dkt. 77-1]; Pesctore Pls.' Opp'n to Samark Jose Lopez Bello's & Yakima Trading Corp.'s Mot. to Intervene (Opp'n) [Dkt. 79]; *see also* Samark Jose Lopez Bello's & Yakima Corp.'s Reply Mem. in Supp. of Mot. to Intervene (Reply) [Dkt. 80].

of its rights would be directly affected by this litigation." *Nat'l Wildlife Fed'n v. Burford*, 878

F.2d 422, 434 (D.C. Cir. 1989). That said, "[t]he most important consideration in deciding

whether a motion for intervention is untimely is whether the delay in moving for intervention

will prejudice the existing parties to the case." 7C Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure § 1916 (2019). "Since in situations in which intervention is of

right the would-be intervenor may be seriously harmed if intervention is denied, courts should be

reluctant to dismiss such a request as untimely." *Id.*

Although Plaintiffs have been litigating this case for almost a decade, at no point

had Plaintiffs named or otherwise referred to Mr. Lopez or Yakima until now; Plaintiffs' case

against Mr. Lopez and Yakima is new and Plaintiffs do not explain why Intervenors should bear

the consequences of Plaintiffs' extended litigation in this Court and in Florida. Plaintiffs argue

that the motion to intervene should have been filed earlier, after Plaintiffs mailed copies of their

writs to Mr. Lopez's OFAC-blocked addresses on December 24, 2018. However, Intervenors

note that, because those addresses were blocked, Mr. Lopez could not reside there and so could

not receive notice—which Plaintiffs should have known. Reply at 3. More to the point, even if

Intervenors were aware of their interest in this case by the end of 2018, Plaintiffs do not explain

why a few weeks' delay should be dispositive, especially since Plaintiffs did not file to enforce

their writs until mid-January 2019. Certainly, this case has withstood longer delays. *See, e.g.*,

8/10/2010 Order to Show Cause; 10/5/2009 Order to Show Cause.

Most importantly, Plaintiffs do not explain how they will be prejudiced if the

Court grants intervention. Although Plaintiffs fear Intervenors mean to "reopen the underlying

case that Plaintiffs have spent over a decade litigating," Opp'n at 7, this fear is without basis

since Intervenors explicitly state that their intervention will "not affect the underlying judgment

against the FARC defendants," and their motion references only the enforcement of judgment against them.  Mem. at 8.

Intervenors filed their motion to intervene within a mere 1-2 months of receiving notice that their rights were implicated by this case.  Any related delays will not prejudice Plaintiffs in this case.  The Courts finds Intervenors' motion timely.

### B.  Interest

"Interests in property are the most elementary type of right that Rule 24(a) is designed to protect." *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970).  Because Plaintiffs seek to enforce their Order for default judgment against third-party Intervenors' assets, Plaintiffs face an uphill battle at preventing their intervention.

Undeterred, Plaintiffs first argue that there is nothing left to litigate because the OFAC designation alone is itself enough to find Intervenors agents or instrumentalities of FARC. Not so.  "[T]he agency or instrumentality determination is separate from the determination that an asset is blocked and carries more immediate and substantial consequences than does the SDNT designation." *Stansell*, 771 F.3d at 727.  *Stansell*, which Plaintiffs cite as support, actually made it clear that while a district court may appropriately cite an OFAC designation as evidence of agency and instrumentality, it must also make an independent determination apart from OFAC on those points; it is "not proper for the district court to rely solely on OFAC designation as creating an irrebuttable presumption of agency or instrumentality status." *Id.* at 732 n.13.  Indeed, Plaintiffs apparently recognized as much when they filed their Motion to Enforce with this Court.

Plaintiffs next argue that Intervenors have already forfeited their property interest because their assets are blocked by OFAC.  The argument suggests that if Intervenors cannot currently access their property, then surely it makes no difference to them if Plaintiffs take it.

This argument borders on the frivolous. Intervenors can work with, or litigate against, OFAC to secure the return of their property. But if this Court determines that Intervenors are agents or instrumentalities of FARC and, therefore, allows Plaintiffs to execute against their assets, those assets will be gone forever.

### C. Motion Defects

Plaintiffs also quibble about the form of the motion to intervene.

First, Local Civil Rule 7(j) requires a motion to intervene to be "accompanied by an original of the pleading setting forth the claim or defense for which intervention is sought." LCvR 7(j). Plaintiffs complain that no such pleading accompanied Intervenors' motion. However, Plaintiffs' own pleadings make no mention of Mr. Lopez or Yakima or their assets and Plaintiffs do not identify the missing pleading.

Second, Plaintiffs complain that Intervenors refuse to subject themselves fully to the jurisdiction of this Court, and that their motion should be rejected in this basis alone. Intervenors clarify that they mean preserve their right to argue subject matter jurisdiction and venue. Reply at 4 n.1. Ultimately, the Court will decide its jurisdiction; Plaintiffs' objection is insufficient to cause the Court to reject the motion to intervene.

## IV.   CONCLUSION

Plaintiffs' Motion to Enforce carries significant implications for Intervenors and their property.  Intervenors have timely moved to intervene.  The Motion to Intervene and Request for Stay, Dkt. 77, will be granted in part and denied in part.  Intervention will be granted.  Since Intervenors plan to file "additional motions to vacate or modify the Court's Order, to dissolve the writs, and to stay the execution of judgment," Mem. at 3, the motion for a stay will be denied at this time.

A memorializing Order accompanies this Memorandum Opinion.


Date: May 20, 2019

_____
ROSEMARY M. COLLYER
United States District Judge